**Louis Marion JOHNSON, Appellant,**

v.

**Patricia Lee JOHNSON, n/k/a Patricia Lee Scheer, Respondent.**

**No. 50230.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 30, 1986.

Claude Hanks, Creve Coeur, for appellant.

Frederick H. Schwetye, Union, for respondent.

CRIST, Judge.

Husband appeals from a trial court judgment finding him in civil contempt for failure to pay child support. We affirm as modified.

The parties were granted a dissolution on April 16, 1982, after a twenty year marriage. At the time of the dissolution the parties had one emancipated daughter and three minor children, one of whom has since become emancipated. Wife was awarded custody of the minor children. Husband was ordered to pay $30 per week per child in child support and was granted one afternoon a month visitation.

Wife brought this motion to find husband in contempt for nonpayment of child support. In 1982 husband paid approximately $700; in 1983 $10; in 1984 $20; and in 1985, during the two months prior to trial, $40. In 1983 wife received, in addition to the $10 from husband, $1,000 from husband's mother after wife executed against a mobile home husband had transferred to his mother. The trial court found

$1,755 had been paid in child support and that $10,095 plus accrued interest was due as of June 7, 1985.

Husband, an auto mechanic, was employed during most of the parties' twenty year marriage, experiencing only short periods of unemployment. Shortly after the dissolution husband was laid off and he has been unable to find steady work since then. In addition to his training as an auto mechanic, husband, since the dissolution, has taken courses in retail sales through the state manpower program.

Husband asserts he has tried diligently to find employment; however, he did not retrieve his tools from his prior place of employment until shortly before the contempt hearing. He alludes to a less than enthusiastic job search; after a divorce some people "due to lack of self-esteem, can no longer push themselves to gain employment."

Husband who is living with, and being supported by his mother, analogizes his living arrangement to that of an eight-year-old. His mother provides him with food, clothing, shelter, transportation and entertainment. He spends a good deal of time watching television and going to bingo games with his mother; however, at the time of the contempt hearing, husband testified he had begun performing a few odd jobs for neighbors and relatives. The trial judge found husband "mentally and physically able to become gainfully employed in a variety of occupations but that he is totally satisfied" to be taken care of by his mother.

Husband's property consists of his trade tools, his guns, a gun cabinet and his clothing. His other property, the mobile home awarded to him in the dissolution, was turned over to his mother. Wife tried to execute on the mobile home, and his mother paid $1,000 to wife. A boat, motor and trailer awarded to wife are now in his mother's possession. He claims these transfers were made in partial satisfaction of debts to his mother.

Husband alleges three errors in the contempt order: (1) the trial court abused its discretion in finding him in civil contempt because he could neither pay nor did he contumaciously place himself in a position where he was unable to pay, (2) the contempt order was punitive rather than coercive and thus was not in the nature of civil contempt, and (3) the contempt order did not state with sufficient particularity a factual basis for the finding of contempt.

Husband's first two points both attack the trial court's finding of contempt, and thus we consider them together.

The Missouri Supreme Court in two companion cases, *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976) and *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976), held that imprisonment for civil contempt for failure to make payments ordered in a dissolution decree was constitutional upon finding either an ability to pay and purge the contempt or that the contemnor intentionally and contumaciously placed himself in a position where he was unable to comply with the decree. As Judge Bardgett's separate opinions in *Teefey* and *Stanhope* highlight, the test, ability to pay or a contumacious act, is disjunctive.

Husband argues the trial court abused its discretion in finding him in contempt because he does not have the money to purge himself of the contempt. He relies on *State ex rel. Foster v. McKenzie*, 683 S.W.2d 270 (Mo.App.1984) which held where husband is indigent he cannot be jailed for civil contempt for failure to pay child support. Unlike *Foster* here there was no finding husband was indigent; in fact the record indicates he posted the $15,000 appeal bond the day of trial. Husband's argument ignores that the test for contempt is in the disjunctive; the trial court found him in contempt for placing "himself voluntarily in a position financially to be unable to comply with the court's order thus willfully and continuously refusing and failing to obey the court." He was not found to be in contempt for having the money and refusing to pay it, but for intentionally and contumaciously putting himself in a situation where he may not have the money to pay.

In his brief husband, citing the *New Catholic Dictionary* (Vatican Edition, 1929), argues contumacy denotes "stubbornness" and "obstinate disobedience." He claims his actions demonstrate a good faith attempt at compliance and not contempt, citing *Hoffmeister v. Tod*, 349 S.W.2d 5 (Mo. banc 1961). Husband earned $700 in 1984 from which he made no support payments; that is not good faith. The trial court found "no showing of just cause or excuse for [husband's] failure to pay the child support" and husband capable of gainful employment in more than one occupation. The trial court further found husband was carrying out a threat to wife that he would never pay child support. Telling wife he would not pay child support, not holding a job after a lifetime of employment, and living off his mother are signs of stubbornness and obstinate disobedience to the dissolution decree.

The trial court views the witnesses and judges their credibility. The ruling of the trial court will not be disturbed unless there is a clear abuse of discretion. *Bopp v. Bopp*, 671 S.W.2d 348, 352 [13] (Mo.App. 1984). After wife made a prima facie case by showing non-payment of child support, the burden shifted to husband. *In re Marriage of Horstmeier*, 690 S.W.2d 471, 472 [1] (Mo.App.1985). There was no abuse of discretion in finding husband voluntarily and contumaciously placed himself in a position whereby he could not pay child support. *See Owsley v. Owsley*, 693 S.W.2d 897, 898 [3] (Mo.App.1985); *McCollum v. McCollum*, 693 S.W.2d 307, 310 (Mo.App. 1985); and *Haley v. Haley*, 648 S.W.2d 890, 892 [2] (Mo.App.1982).

In his third point relied on husband alleges the contempt order is inadequate because it does not cite supporting facts with particularity. *See e.g. Townsend v. Townsend*, 713 S.W.2d 302, 303 (Mo.App.1986); and *Hunt v. Moreland*, 697 S.W.2d 326, 328 [3] (Mo.App.1985). The order finding

husband in contempt contains specific findings of fact.

Because of the importance of the facts in a civil contempt order we provide them here: the decree provided for $30 per week per child in child support; one child has since become emancipated; $11,850 had accrued in child support payments as of June 7, 1985; $1,755 was credited towards those payments; delinquent child support, on June 7, 1985, amounted to $10,095 plus interest; the original decree found husband able to make the child support payments; husband had no justification for failing to make the payments; husband is mentally and physically capable of gainful employment; husband promised wife he would not pay child support; husband is not paying child support; husband has chosen to be dependent on his mother rather than work and satisfy his child support obligations; husband voluntarily placed himself in a position financially to be unable to comply with the support order; husband received $700 in wages that he did not use for child support although he was being supported by his mother; and all reasonable collection efforts by wife have failed.

On the facts the trial court was justified both in finding husband contumaciously placed himself in a position where he would not be able to pay child support and in ordering husband committed until he purged the contempt. The evidence indicates the possibility husband may never have the assets to purge the contempt. Accordingly, the judgment is modified by adding: "This Court shall retain jurisdiction until the contempt has been purged. In the event husband shall be unable to purge himself of contempt within a reasonable time, this Court shall then consider the viability of a work-release program, payback plan or other alternative method of purging the contempt."

The judgment as modified is affirmed.

SATZ, P.J., and KELLY, J., concur.